UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JANET M. B., | ) | NO. CV 19-2685-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | **AND ORDER OF REMAND** |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS

HEREBY ORDERED that Plaintiff's and Defendant's motions for summary

judgment are denied and this matter is remanded for further

administrative action consistent with this Opinion.


**PROCEEDINGS**


On April 9, 2019, Plaintiff filed a complaint seeking review of

the Commissioner's denial of disability benefits.  On May 17, 2019,

the parties filed a consent to proceed before a United States

Magistrate Judge.  On September 27, 2019, Plaintiff filed a motion for

summary judgment.  On October 28, 2019, Defendant filed a motion for summary judgment.  The Court has taken the motions under submission without oral argument.  <u>See</u> L.R. 7-15; "Order," filed April 12, 2019.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff asserts disability since May 28, 2008, based largely on allegedly extreme sensitivity to synthetic fumes and odors, following workplace exposure to trichloroethylene ("TCE") (Administrative Record ("A.R.") 55-70, 334, 1033-57).[1]  The Court twice previously has remanded this case for further administrative proceedings.  In the first remand order, the Court found material ambiguities and inconsistencies in the Administrative Law Judge's ("ALJ's") first decision.  <u>See</u> A.R. 1124-31 (Memorandum Opinion and Order of Remand in [B.] v. Colvin, CV 13-5618-E); <u>see also</u> A.R. 1138 (Appeals Council's subsequent remand order).[2]  In the second remand order, the Court found that the medical opinions on which the same ALJ purportedly relied in determining Plaintiff's residual functional capacity were

_____

[1]   For a detailed summary of the medical opinion evidence, see the Court's prior remand order at A.R. 1699-1704.

[2]   The ALJ's first decision found, <u>inter alia</u>, that Plaintiff: (1) has severe "multiple chemical sensitivity syndrome, asthma extrinsic, and migraine headaches" (A.R. 17); (2) retains the residual functional capacity to perform light work "except she should avoid exposure to fumes, dust, and industrial pollutants . . ." (A.R. 19); and (3) with this capacity, Plaintiff could perform clerical jobs (A.R. 25 (purportedly adopting vocational expert testimony at A.R. 70-72)).  The ALJ's hypothetical questioning of the vocational expert prior to the first decision had failed to describe accurately the residual functional capacity the ALJ found to exist.

inconsistent, and no medical opinion specifically endorsed the particular environmental limitations the ALJ assessed.  See A.R. 1694-1708 (Memorandum Opinion and Order of Remand in [B.] v. Colvin, CV 16-1130-E); see also A.R. 1711 (Appeals Council's order remanding for further proceedings before a new ALJ).[3]

After the most recent remand, a new ALJ held another hearing at which Plaintiff and a vocational expert testified, and the ALJ reviewed additional evidence (i.e., medical records from visits with Dr. Bernhoft postdating the disability period at issue) (A.R. 1543-1634).  In the third administrative decision, the new ALJ found Plaintiff not disabled based, in part, on the ALJ's belief that Plaintiff's alleged multiple chemical sensitivity syndrome is not even a medically determinable impairment (A.R. 1521-32).  The ALJ found that Plaintiff: (1) has severe "adjustment disorder, migraines, history of bilateral ganglion cysts, lumbar strain, and asthma" (A.R. 1524); (2) retains a residual functional capacity for light work limited to detailed but not complex tasks, and avoiding concentrated exposure to dust, odors, fumes or chemical irritants (A.R. 1525); and (3) with this capacity, Plaintiff could perform work as a marker, routing clerk or ticket seller (A.R. 1531-32 (adopting vocational expert's testimony at A.R. 1618-22)).  All the testifying vocational

_____
[3]     The second administrative decision found, inter alia, that Plaintiff: (1) has severe asthma and severe "multiple chemical sensitivities" (A.R. 995); (2) retains the residual functional capacity for light work involving simple repetitive tasks "in an environment relatively free of dust and fumes consistent with an office work environment as opposed to a manufacturing work environment" (A.R. 1001); and (3) with this capacity, Plaintiff could perform clerical jobs (A.R. 1018-19 (adopting vocational expert testimony at A.R. 1068-69)).

3

experts have opined that, if a person were precluded from all exposure to fumes, dust, odors, gases, etc., there would be no jobs the person could perform.  See A.R. 72-73, 1070, 1622.  The Appeals Council denied review (A.R. 1512-14).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards.  See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

If the evidence can support either outcome, the court may
not substitute its judgment for that of the ALJ.  But the
Commissioner's decision cannot be affirmed simply by
isolating a specific quantum of supporting evidence.
Rather, a court must consider the record as a whole,
weighing both evidence that supports and evidence that
detracts from the [administrative] conclusion.

///
///

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

**DISCUSSION**

For the reasons discussed below, yet another remand is appropriate.

**I.   The ALJ Did Not Violate the Law of the Case Doctrine By Revisiting the Prior Step 2 Determinations.**

Although the Court finds remand to be appropriate, the Court rejects Plaintiff's argument regarding the law of the case doctrine. The law of the case doctrine, which applies in the social security context, sometimes prevents a tribunal from considering an issue that has already been decided by the same tribunal, or by a higher tribunal, in the same case.  See Stacy v. Colvin, 825 F.3d 563, 567 (9th Cir. 2016) ("Stacy").

The legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court [or in the Social Security context, an ALJ] or an appellate court [or in the Social Security context, a district court].  All rulings of a trial court are subject to revision at any time before the entry of judgment.  A trial court may not, however, reconsider a question decided by an appellate court.

///

United States v. Houser, 804 F.2d 565, 567 (9th Cir. 1986) (emphasis original; citation and internal quotation marks omitted).

Application of the law of the case doctrine is discretionary. See United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000). The doctrine, which "is concerned primarily with efficiency," "should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." Stacy, 825 F.3d at 567 (citation omitted). Here, Defendant does not argue that the evidence on remand was substantially different, the controlling law has changed, or that applying law of the case would be unjust. Rather, Defendant argues that this Court's previous remand orders did not make affirmative findings regarding the prior ALJ's Step 2 determinations or otherwise preclude the new ALJ from reconsidering the prior ALJ's Step 2 determinations.

The law of the case doctrine applies to issues decided explicitly and also applies to issues decided "by necessary implication." Hall v. City of Los Angeles, 697 F.3d 1059, 1067 (9th Cir. 2012). In Stacy, the Ninth Circuit observed that there had been two prior Step 4 findings by ALJs that the claimant could not perform his past relevant work and also observed that the district court had not explicitly ruled as to these prior findings. Stacy, 825 F.3d at 567. In dicta, the Stacy Court stated, "this is typically the type of determination that should not be reconsidered under the law of the case doctrine." Id. The Stacy Court's holding, however, was that the district court had not abused its discretion in declining to apply the law of the

case doctrine because new material evidence had been considered on remand.  _Id._

In the present case, although there was some new evidence considered on remand (A.R. 1546-1634), the new evidence did not render the record substantially different from the record that existed before the remand.  In the two prior actions in this Court, Plaintiff challenged the prior ALJ's consideration of the evidence in reaching decisions at Steps 3 and 5 of the sequential evaluation process.  In the prior two actions, Plaintiff did not raise any issue concerning the ALJ's determinations at Step 2 that Plaintiff suffered from severe multiple chemical sensitivity.  _See_ Docket No. 16 in [B.] v. Colvin, C.D. Cal. Case No. 16-1130-E, and Docket No. 14 in [B.] v. Colvin, C.D. Cal. Case No. 13-5618-E (Plaintiff's motions for summary judgment filed in those actions).  The Court's prior remand orders did not expressly limit the scope of remand or impliedly resolve any issues concerning the prior ALJ's Step 2 determinations.  _See_ A.R. 1126-31, 1704-08; _see also_ A.R. 1711 (Appeals Council's remand order authorizing a new ALJ to take any further action needed to complete the administrative record and issue a new decision).

For these reasons, the Court declines to hold that the new ALJ was precluded from revisiting the prior Step 2 determinations.  _See_ _Whaley v. Colvin_, 2013 WL 1855840, at *14 (C.D. Cal. Apr. 30, 2013) (finding the law of the case doctrine would not prohibit an ALJ from reconsidering claimant's residual functional capacity on remand, where court remanded on Step 5 issue and did not specifically preclude the ALJ from reconsidering claimant's residual functional capacity but

rather allowed the ALJ "otherwise [to] re-evaluate his decision");
compare Ischay v. Barnhart, 383 F. Supp. 2d 1199, 1217-19 (C.D. Cal.
2005) (finding law of the case precluded ALJ from revisiting any other
issues where court's remand only authorized ALJ to take additional
evidence to determine Step 5 issue and impliedly affirmed ALJ's
findings at earlier steps).

## II. **The ALJ Materially Erred in Making a Medically Unsupported Finding that Plaintiff's Multiple Chemical Sensitivity Syndrome is Not a Medically Determinable Impairment.**

The ALJ found that Plaintiff's multiple chemical sensitivity
syndrome is not even a medically determinable impairment (A.R. 1524).
The ALJ cited records from Plaintiff's early treatment suggesting that
Plaintiff then had normal pulmonary functions and "no symptoms
consistent with TCE" exposure (A.R. 1524).  The ALJ dismissed later
testing showing abnormalities as being (in the ALJ's lay opinion)
linked to asthma or episodic migraines rather than to multiple
chemical sensitivity syndrome (A.R. 1524).  The ALJ then declared that
"[t]he weight of the evidence does not establish a physically based
chemical sensitivity due to exposure" (A.R. 1524).  The ALJ lacks the
necessary medical expertise so to interpret the medical records.

As this Court observed in a previous remand order: (1) the prior
ALJ did not adequately consider the numerous conflicting medical
opinions; (2) the Administration could benefit from obtaining
potentially synthesizing testimony from a medical expert; and (3) it
appeared that Plaintiff's condition may have been worsening over time

(A.R. 1705-07).  On remand, the new ALJ did not obtain any medical
expert testimony to interpret the conflicting medical opinions.  The
consultative examiners (Drs. Levine, Soffer and El-Sokkary) and the
state agency physicians (Drs. DeSouza and Morgan) could not fill this
gap in medical proof.  These physicians reviewed early records and
opined regarding Plaintiff's condition in 2010 and 2011, which was
before testing and treatment by Drs. Silver and Bernhart for reported
neurological injuries from Plaintiff's TCE exposure (detailed below),
and before Dr. Dahlgren's opinion that Plaintiff is totally disabled
and totally restricted from exposure to "fumes, odors, dusts, gases
[and] poor ventilation" (A.R. 867-68).

A.    **Summary of the Relevant Medical Records**

Plaintiff was exposed to TCE in May of 2008 (A.R. 383).
Treatment records reflect suspicion by several doctors that Plaintiff
has experienced neurological symptoms from this exposure.  In June and
July of 2008, neurologist Dr. Jonathon Rutchik ordered testing and
stated, "It remains to be seen whether the exposure dose and duration
is responsible for the present symptoms to a direct effect.  It may be
that the symptoms are the result of posttraumatic sequellael" (A.R.
379-80, 387).

Occupational and environmental medicine doctors Erika Schwilk and
Gina Solomon evaluated Plaintiff on July 31, 2008, and noted findings
consistent with toxic TCE exposure (i.e., trigeminal area numbness,
decreased left side corneal reflex, and mild difficulty with memory
and concentration) (A.R. 430, 462-70).  The doctors reportedly

expected that Plaintiff's symptoms would improve, but recommended additional testing (A.R. 430, 468-69).

On November 8, 2008, Plaintiff underwent a comprehensive neuropsychological evaluation with Dr. Claude Munday (A.R. 495-508). Dr. Munday acknowledged an acute event (TCE exposure) which led to some mental status changes and "some legitimate organic deficiency [] at the very high end of the cognitive spectrum," but also opined that worry was a "big producer" of Plaintiff's difficulties (A.R. 506-07).

Occupational and environmental medicine doctor James Dahlgren authored a letter dated March 24, 2010 (A.R. 721-22). This letter states that Plaintiff experiences multiple chemical sensitivity, "whereby brief exposures to various chemicals at low doses result in central nervous system dysfunction manifested by severe headache and nausea," which require rest for hours or days to recover (A.R. 721-22). Dr. Dahlgren opined that Plaintiff was totally disabled as a result of her TCE exposure (A.R. 722).

Subsequent to Plaintiff's consultative examinations and the state agency physicians' review, internist rheumatologist Dr. David Silver examined Plaintiff on July 7, 2011, and prepared a "Disability Medical Examination in Rheumatology" report (A.R. 174-75, 182-83; see also A.R. 933-42). Plaintiff had reported to Dr. Silver that, when Plaintiff is exposed to different substances, she experiences dizziness, fatigue, cognitive impairment, twitches and stuttering (A.R. 245; see also A.R. 334 (Plaintiff reporting that when she comes in contact with odors, fumes, scents, or smoke, her jaw paralyzes, she

begins to stutter, becomes disoriented, blanks out, and can remain in that state for minutes to days depending on the type and length of her exposure); A.R. 366-67 (declaration of Plaintiff's civil attorney reporting having witnessed "episodes" lasting 20 to 30 minutes where Plaintiff's eyes roll back in her head, her jaw locks, she stutters and cannot speak)).

On examination, Plaintiff reportedly had a facial tremor (right greater than left) possibly due to trigeminal nerve injury, arresting tremor with cogwheeling rigidity, and decreased light touch in the feet (A.R. 183-86, 189, 191-93, 936). Dr. Silver placed a halter monitor on Plaintiff to record her ECG activity for 24 hours and, upon examining the test results (contained in a "Heart Rate Variability Report - Summary"), agreed to serve as an expert in her civil case (A.R. 199-200; see also A.R. 950-71). The halter monitor examines autonomic nervous system functioning, and according to Dr. Silver, provides a window "into what is going on in the central nervous system" (A.R. 201-02). The test showed that Plaintiff's circadian rhythm was abnormal (i.e., when she slept, her parasympathetic nervous system did not slow down her heart rate or breathing, and her blood pressure did not drop) (A.R. 205-06, 953). Based on this testing, Dr. Silver opined "to a reasonable medical probability" that Plaintiff incurred neurological injury as a result of her TCE exposure manifested by hypersensitivity to chemicals (A.R. 975).

Dr. Silver saw Plaintiff again on November 16, 2011 (A.R. 227, 943). Plaintiff then reported worsening facial twitching, dizziness when "shifting her face," and cognitive impairment (A.R. 228). On

examination, Dr. Silver observed that Plaintiff had facial twitching and tremor, stuttering and difficulty getting off the exam table (A.R. 228-29, 943).

Dr. Silver opined that Plaintiff had suffered a "significant neurologic injury" from her TCE exposure, resulting in chemical sensitivity and other neurologic symptoms (A.R. 234-35; see also A.R. 973-76). Dr. Silver opined that Plaintiff was "incapable of returning to the open labor market" because Plaintiff would have "frequent episodes, whether it [sic] be related to a chemical that she is exposed to or some stimulus, be it her memory, et cetera, that she would not be considered a reliable employee" (A.R. 235, 240-41). Dr. Silver opined that Plaintiff should not get into an enclosed place, such as an airplane, in which chemical smells (fuel, perfume, cologne, etc.) could be smelled because she could have a significant reaction to those smells detrimental to her health (A.R. 975-76). Dr. Silver also opined that Plaintiff should avoid driving trips of more than two hours because of heightened potential of fatigue and smelling chemicals (A.R. 976).[4]

_____

[4]    Following Dr. Silver's testing, Dr. Dahlgren completed a "Physical Capacities Evaluation" dated December 6, 2011 (A.R. 867-68). Dr. Dahlgren indicated that Plaintiff has, inter alia, total restriction from extreme cold/heat, wetness, noise, vibration, fume, odors, dust, gases, poor ventilation, and hazards (A.R. 867-68). Dr. Dahlgren stated, "This patient is disabled by the mental impairment. She has toxic encephalopathy due to brain damage from exposure to [TCE]" (A.R. 868). In a letter dated December 8, 2011, Dr. Dahlgren explained that on examination Plaintiff is unable to concentrate and answer questions easily, and a "holter electrocardiogram" test showed suppressed parasympathetic function indicative of severe autonomic neuropathy (A.R. 870). Dr. Dahlgren opined that
(continued...)

Dr. Robin Bernhoft prepared a "Physical Medical Source Statement" dated January 9, 2015 (A.R. 1509-11).  Dr. Bernhoft had seen Plaintiff four times between June 27, 2013 and February 13, 2014 (A.R. 1509). At Plaintiff's initial consultation with Dr. Bernhoft on June 27, 2013, Plaintiff had complained of "very severe" cognitive problems, nausea, diarrhea, vomiting, stuttering, facial numbness/twitching, disorientation, and memory loss brought on by exposure to carpet, colognes, copy machines, seasonal pollens, chlorine, exhaust, pumping gas, perfumes, cigarettes, and crops being sprayed (A.R. 1331).  Based on Plaintiff's reports "well documented on neuropsych testing," Dr. Bernhoft diagnosed, inter alia, toxic encephalopathy following prolonged exposure to airplane exhaust and acute TCE exposure, dysautonomia, allergies, a history of asthma, heart palpitations, and chronic fatigue (A.R. 1332-33).

Dr. Bernhoft opined, inter alia, that Plaintiff would be off task for 25 percent or more of a workday and incapable of "low stress" work due to her toxic encephalopathy (A.R. 1510-11).  Dr. Bernhoft also opined Plaintiff would be absent from work "20+ days per month" (id.). When asked how often Plaintiff would need to take unscheduled breaks during a workday, Dr. Bernhoft wrote "unemployable" (A.R. 1511).

///

///

///

---

[4](...continued)
Plaintiff would not improve and that her lung function and reduced mental function will only worsen with time (A.R. 871). Dr. Dahlgren opined that Plaintiff is "unable to function at any level at all" for work (A.R. 871).

B.   **Analysis**

Given the nature of these medical records, the ALJ erred in determining on his own that Plaintiff's multiple chemical sensitivity syndrome is not a medically determinable impairment.  <u>See</u> <u>Day v. Weinberger</u>, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ who is not qualified as a medical expert cannot make "his [or her] own exploration and assessment as to [the] claimant's physical condition"); <u>see also</u> <u>Rohan v. Chater</u>, 98 F.3d 966, 970-71 (7th Cir. 1996) (ALJ may not rely on his or her own lay opinion regarding medical matters); <u>Ferguson v. Schweiker</u>, 765 F.2d 31, 37 (3d Cir. 1995) (same).  At a minimum, the ALJ should have consulted a medical expert.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983) ("[T]he ALJ has a special duty to fully and fairly develop the record to assure the claimant's interests are considered.  This duty exists even when the claimant is represented by counsel."); <u>Silva v. Barnhart</u>, 2003 WL 22425010, at *10 (N.D. Ill. Oct. 23, 2003) (remanding where ALJ assessed the claimant's tolerance for pulmonary irritants based on the ALJ's interpretation of medical records instead of consulting a medical expert).

An error "is harmless where it is inconsequential to the ultimate nondisability determination." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and quotations omitted).  The Court cannot deem the ALJ's lay interpretation of medical matters, or the ALJ's failure to consult a medical expert, to have been harmless in light of the medical opinions suggesting that Plaintiff would be disabled by her impairments.  Contrary to Defendant's apparent argument, an ALJ's

finding of some severe impairments does not necessarily render harmless the ALJ's erroneous failure to find another alleged impairment to be a medically determinable impairment. In assessing residual functional capacity, the ALJ considers only impairments found medically determinable. 20 C.F.R. § 404.1545(a)(2); see Butler v. Colvin, 2016 WL 8232243, at *4-5 (E.D. Wash. Aug. 23, 2016). Accordingly, in the most recent administrative decision, the ALJ did not consider the effects of Plaintiff's multiple chemical sensitivity syndrome in assessing Plaintiff's residual functional capacity. Such lack of consideration was potentially prejudicial.

**C.    Remand is Appropriate.**

Although the administrative proceedings already have been protracted, another remand is appropriate because further administrative review could remedy the most recent administrative errors. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2010); see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits"); Treichler v. Commissioner, 775 F.3d 1090, 1101 n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014) (court will credit-as-true medical opinion evidence only where, inter alia, "the

record has been fully developed and further administrative proceedings would serve no useful purpose"); <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180-81 (9th Cir.), <u>cert. denied</u>, 531 U.S. 1038 (2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

There remain significant unanswered questions in the present record.  <u>Cf.</u> <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1173 (9th Cir. 2015) (remanding for further proceedings to allow the ALJ to "comment on" the treating physician's opinion).  Again, since it appears from the medical evidence that Plaintiff's condition may have been worsening over time, it is not clear on the present record whether the ALJ would be required to find Plaintiff disabled for the entire claimed period of disability even if the more restrictive medical opinions were fully credited.  <u>See</u> <u>Luna v. Astrue</u>, 623 F.3d 1032, 1035 (9th Cir. 2010).

///

///

///

///

///

///

///

///

///

///

///

///

**CONCLUSION**

For all of the foregoing reasons,[5] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 20, 2019.

                                        /s/
                                _____
                                    CHARLES F. EICK
                            UNITED STATES MAGISTRATE JUDGE

---

[5]     The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.  "[E]valuation of the record as a whole creates serious doubt that [Plaintiff] is in fact disabled." <u>Garrison v. Colvin</u>, 759 F.3d at 1021.